**Case 17.** Louisville & Nashville Railroad Co. *vs.* Yandell.

1. Railroad companies are legally responsible for injuries to slaves hired to aid in conducting trains where the injury is the result of the carelessness of their agents.
2. Railroad companies, by their agents, are *bound* to exercise the same care and prudence to preserve from injury, slaves hired to aid in conducting trains, as an ordinarily careful man would observe in regard to his own property.

[The facts of the case are stated in the opinion of the court.—REP.]

*James Speed* for appellants—

1. This is a case in which one agent or servant of the company has been injured by the carelessness of

another agent or servant, while both were in the service of the principal. The two agents have one purpose in view. The one was a slave. the other a free man. It is not supposed that it will be contended, that if the slave had been free, that he could have recovered for the injury received. The authority to the effect that one agent injured by another agent, where they are employed to unite their labor to effect a particular object, cannot recover from their common principal. is overwhelming. (See *Farnwell vs. Boston and Worcester Railroad Company*, 4 Metcalf's Rep., 49; *Murray vs. South Carolina Railroad Company*, 1 McMillan, 385; *Brown vs. Maxwell*, 6 Hill, 592; *Conner vs. Railroad Company*, 6 Barb , 231; *Priestley vs. Foster*, 3 Mason and Welby, 1; *Smith on Master and servant*, 189, side page, *Smith's Mercantile Law*, 179.) Against this array of authority, which might be greatly extended, stands the case of the *Little Miami Railroad vs. John Stevens*, 20 *Ohio Rep.*, 415, in which case the court was divided, and the case not authoritative.

This is not a case where the principal is charged with the employment of a totally incompetent agent whereby an injury accrued to the plaintiff. It is not pretended that there was any incompetency on the part of the engineer, or conductor, which caused the injury to plaintiff's slave. The charge is solely, that of carelessness and negligence on the part of the conductor and engineer, who were in the employment of the company.

All that can properly be demanded of owners of railroad cars, &c., is that they employ skillful engineers and conductors, and they are not responsible for any injury which may ensue. The engineers and conductors have all a common interest in performing their respective duties with faithfulness—their own safety is involved. They have to deal with, and control some of the most powerful agencies. The slightest neglect may endanger the lives of all engaged with, or conveyed by the cars; all

engaged are interested, not only in the strict performance of his own duty, but that all others should perform their respective duties. All that can lawfully be required of the company is, that competent agents be selected and placed in charge of the train; and that the machine selected, be safe and in good condition, all which constitute the train. All who are engaged in conducting the train, constitute parts of it; every one engaging to perform any part of the duty in running the train, knows that he is uniting himself with it, and that the owners can give no other assurance of safety than that which results from a selection of competent hands and good machines; any other rule would make every hand a mere passenger, and ignore the idea that he was a hand to perform duty in which his own safety was involved. If any injury result to one placed in such circumstances, from the act or carelessness of a co-worker, he may be responsible, but not the principal. Upon principle then, as well as authority, the employer does not give to a servant, employed on a railroad car, any implied warranty against the negligence of his fellow-servant.

2. But it is objected that the rule stated does not apply where the person employed is a slave, and *Scudder vs. Kelly*, 1 *Woodbridge*, 195, *Georgia Reports*, is referred to. This case admits the rule, but denies its application to cases of hired slaves. This case is denied by us to be the law. How is it that the master of a slave who hires him to act as brakeman upon a car, makes any other or different implied contract in regard to the safety of the slave, than that made by a free man, who takes the same place under the same contract? The wages are the same—the services the same—and the contract is betwixt freemen. The free man who contracts to act as brakeman, engages for his own sufficiency, and the master who a hires slave for that purpose, engages that he is reasonably fit for the purpose, or capable of the use known to be intended. (*Swigert*

*vs. Graham,* 7 *B. Monroe,* 663.) The master knows, when placing his slave in that position, that he is attaching him to a powerful and perilous machine—that he may be lost by the carelessness of others, and that others may be lost by his carelessness. Is there not, then, as much reason in saying to the master that he will be liable for the carelessness of his slave, as to say that he may recover of the hirer because his slave has received an injury by one of the hazards to which he has been exposed by the master, in hiring him for such service. The rule in the Georgia case is based upon a false principle of humanity. If it makes the hirer more vigilant, it will make the owner less so. Slaves, in that opinion, are treated as without will or discretion, and bound unconditionally to obedience. Such is not true in fact or in law. They are to be regarded as reflecting, reasoning beings, and capable of using means for their own security and self-preservation; and are not bound to do all the commands of the master or hirer—it is only the lawful commands that are to be obeyed.

The case is not one where there has been a wrongful assumption of authority over a slave; it is a case of bailment for a particular service; the slave was injured whilst in that service. The case of *King vs. Shanks,* 12 *B. Monroe,* 410, was not a case of bailment, but of wrongful intermeddling with the slave of another. The cases of *Swigert, &c. vs. Graham, supra,* and *Western vs. Pollard,* 16 *B. Monroe,* 315, are cases where slaves were hired, and lost in the performance of the service for which they were hired. In the first case, the slave was hired to work as a hand upon a steamboat, and in the discharge of the duties incident to that service, was drowned. The court is referred to the language employed in that opinion. Can it be possible that the law, as it is there laid down by this court, and that the hirer of two slaves, one to act as engineer, and the other as brakeman, shall be held liable to the appellee for an

injury to the brakeman resulting from the carelessness of the engineer? "A hirer is only bound for ordinary diligence, which means that degree of care, or attention, or exertion, which, under the circumstances, a man of ordinary prudence and discretion would use in reference to the particular thing, were it his own property." (*Swigert vs. Graham, supra.*) The case of *Western vs. Pollard, supra*, is in accordance with it, and both authorities in this case.

The demurrer should have been sustained.

1. The answer denies the negligence charged. After the evidence was heard, the court, at the instance of the plaintiff's attorney, instructed the jury, that if the engineer, and other officers of defendant, did not take ordinary care of the boy, in consequence of which he was injured, the law was for the plaintiff. There is nothing to show that the boy was in their care; he was hired as brakeman and car coupler; he had his duties to perform, and so had they; there was no bailment of the boy to them; he was their co-laborer, an intelligent being, not a *thing* in their charge. The engineer might be liable to the boy if a free man, or liable to the plaintiff, if guilty of neglect; but certainly his negligence cannot be imputed to the company. The injury was the result of one of the ordinary hazards contemplated at the hiring. Suppose the engineer had also been the slave of the plaintiff, could his negligence have been imputed to the company? Certainly not; because he had engaged that they should take the chances of the negligence of each other.

The second instruction is to the effect that if the boy voluntarily assumed a hazardous position, yet the company is liable, if by ordinary care the officers of the cars could have prevented the injury. This is not the law.

The third instruction is, in substance, that if the boy's duties were hazardous, and the company might have prevented the injury, but did not do so, the law is for the plaintiff. This instruction is palpably er-

roneous. This binds the company to the utmost possible care, and makes it liable for the slightest negligence.

*Wolfe & Poindexter* for appellee—

The petition charges that the plaintiff's slave, in the employ of the railroad company, was injured by the carelessness and negligence of defendant's agents, the engineer and conductor. The defendant demurred to the petition, and answered, denying the negligence, &c.; a jury found a verdict for the plaintiff.

Three questions are presented: 1. Did the court err in overruling the demurrer? 2. Does the proof sustain the charge of negligence? 3. Did the court err in its instructions to the jury?

It has been repeatedly decided by this court, that the hirer of a slave is responsible to the owner for loss of, or injury to, the slave, arising from carelessness or negligence; and it is not material whether the hiring is by an individual or by a company. *Graham vs. Swigert, &c.,* 7 *B. Monroe,* 661, recognizes this principle; also *Hawkins vs. Phythian,* 8 *Ib.* The same principle is recognized in *Duncan vs. Railroad Company,* 2 *Richardson,* 613. In the latter case the court said, "it was in vain to say that the slave was a moral agent, capable of *wrong* as well as of *right* action, and that he killed himself by jumping off when he ought not."

The application of this principle to this case is denied by appellant, and the responsibility of the company is denied where the carelessness is that of an employee upon a railroad, and not of the company, and that the employee whose neglect caused the injury is alone responsible, and cite the cases 1 *McMillin,* 385; 4 *Metcalf,* 49; 6 *Hill,* 594, &c. We reply that these cases are not applicable. These are cases where the injured party was a *white* man—in this case a *slave* was injured, and in this lies the difference. In the two first cases cited by appellant,

the court said cases might occur in which one agent would be liable to another. In such cases as where the owner never employed improper persons as agents, by whose ignorance or folly another is injured. It is contended for appellee in this case, that the agents—the engineer and conductor—were improper persons, and their folly, or something worse, produced the injury. The cases cited all apply to cases where white men, free agents, were the persons suing. This is the case of an injury to a slave, who cannot complain or leave the service for which he is hired.

But there is an implied warranty which will protect the employer. Every man holding himself out for employment in a particular business, impliedly asserts his capacity to perform such business properly. The slave could not control appellants in the choice or continuance of the agents with whom he was to act, and his want of capacity forbid his knowing who was and who was not qualified to act as agent of the company. Moreover, the injury here is not to the person but to the property of the appellee. The demurrer of appellants was properly overruled.

2. In giving the rule of duty to be observed by the hirer of a slave in the case of *Graham vs. Swigert, supra,* the court says: The rule that the bailee or hirer is bound to ordinary dilligence, and is responsible for neglect, is doubtless true in all cases of their bailment. Again, the court says: What sort of diligence, then, is the hirer to use for the safety of the slave, and prevention of injury? He ought not, by his orders, to expose him to extraordinary hazard without necessity, though they be incident to the nature of the service, and that when he does expose him to such hazard necessarily or properly, he should use such precautions, by instructions or otherwise, as the circumstances seem to require, and as a man of ordinary prudence would use in so exposing his own slave.

What is said by the court in the case of *King vs.* L. & N. R. R. Co *vs.*
*Shanks,* 12 *B. Monroe,* 415, does not conflict with Yandell.
what is said in the case of *Graham vs. Swigert, su-*
*pra.* The court say, that which is ordinary diligence
depends upon each particular case; *ordinary diligence*
*would sometimes require extraordinary exertions, and if*
*not used, the failure to use them, would amount to gross*
*negligence.* The proof in this case shows clearly,
gross negligence and carelessness on the part of the
company's agents, for which they are responsible.

3. There is nothing wrong in the instructions of
the court. The first three are all based upon the
general proposition, that the officers of the company
are bound to exercise ordinary care and prudence
in conducting their business, in such manner as not
to endanger the property of slaves hired by the com-
pany. That if the slave, when injured, was in a
perilous condition, they were bound to use extraor-
dinary exertions to save him from injury. The find-
ing of the jury is conclusive of the fact of ordinary
neglect, and ought to be sustained by this court.
The court are referred to the case of *Scudder vs.*
*Woodbridge,* 1 *Kelly, Georgia Reports,* 195, as in point,
in which the question is well discussed by Judge
Lambkin, equally creditable to his head and his
heart.

Judge CRENSHAW delivered the opinion of the court:　　　　　　December 26.

In August, 1855, Yandell hired his negro man,
Henry, to the Louisville and Nashville Railroad
Company, for the price of $25 per month. It is not
disputed, that Henry was hired to the defendants to
be employed by them in labor connected with the
business of running trains upon the railroad; and
the duty which was assigned him, was that of con-
necting the cars, one with another, and of connect-
ing cars with the locomotive, and, also, of attending
to the brake at the front end of the car nearest to
the engine. In November, 1855, a train of cars left
Louisville for Shepherdsville, under the superin-

L. & N. R. R. Co
*vs.*
YANDELL.

tendence of the conductor, Henry being aboard. It appears that two wood cars were carried out, in connection with the train, about five miles from Louisville, and there left to be loaded with wood, and to be pushed back to Louisville, upon the return of the train from Shepherdsville. After the train was disconnected from the wood cars, and had gone on to Shepherdsville, Craig, who had procured the wood cars to be carried out from Louisville, separated them, and when the train returned from Shepherdsville, they were on the railroad about two hundred yards asunder. When the locomotive approached the first wood car, the negro man, Henry, as was his duty and business, got down from the train, and whilst it was stationary, fastened the first wood car to the locomotive. He then took his stand upon the pilot block, which is a part of the cow-catcher, and remained there until the train started and came in collision with the second wood car. This collision was so severe as to prostrate the witness, Walker, who was standing upon the first wood car, and to cause Henry to fall from his position on the pilot block, whereby, his leg was crushed from the knee down to the foot. The injury was so severe as to render it necessary to amputate the fractured part of the limb, and to reduce, greatly, the value of the slave, if not to render him valueless.

This suit was brought against the railroad company to recover damages for the injury done to the slave in consequence of the collision with the wood car, which is averred to have occurred in consequence of the negligence, carelessness, and improper conduct of the conductor and engineer of the train. There was a demurrer to the petition, upon the ground that the facts stated, did not show a cause of action. The demurrer was overruled, and whether the court erred or not, in overruling the demurrer, is the first question for consideration.

It is not insisted, as we understand the argument of the counsel of the defendant, that the facts stated

in the petition, and the averments therein, of negligence and carelessness, would be insufficient to manifest a cause of action, if the case were one of ordinary bailment to an ordinary bailee. But, the ground assumed is, that the bailment was to a railroad company engaged in an enterprise more or less hazardous; that the implied understanding was, and in the nature of the thing ought to be, that the master of the slave ran the risks incident to the employment in which the slave was to be engaged, and moreover, that the law is as determined in a variety of adjudications in several of our sister states, that railroad companies are not responsible for injuries occasioned to their employees whilst engaged in the offices and duties necessary in the management and conduct of their locomotives and trains; that this law is founded in good policy, and should be sanctioned by this court; that the adoption of this principle of law is indispensable to the safety of passengers, and necessary to stimulate each employee to the faithful discharge of his duties; that when each is aware of the irresponsibility of the company to him, he will not only be more prompt, careful, and attentive to his duties, but will excite others to the discharge of theirs, and report them to the proper authority for neglect or mismanagement; that the good conduct of all the employees will be thus promoted, and the safety of themselves, and of the passengers, increased. ·

Whatever may be the wisdom and policy of this rule of law, when applied to free persons employed in conducting and managing locomotives and trains upon railroads, we do not hesitate to reject its application to the present case, in which a slave was an employee; and it is to be remembered, that in all the adjudications relied upon by the defendant's counsel, as establishing the principle of law contended for by him, the rights of free persons were involved, and not the rights of the owners of slaves. There is, in our opinion, manifest propriety in distin-

L. & N. R. R. Co
vs.
YANDELL.

1. Railroad companies are legally responsible for injuries to slaves hired to aid in conducting trains where the injury is the result of the carelessness of their agents.

L. & N. R. R. Co
*vs.*
YANDELL.

guishing between the two classes of cases involving free persons on the one hand, and slaves on the other, and in applying a different rule of law when a slave is an employee.

A slave may not, with impunity, remind and urge a free white person, who is a co-employee, to a discharge of his duties, or reprimand him for his carelessness and neglect; nor may he, with impunity, desert his post at discretion, when danger is impending, nor quit his employment on account of the unskillfulness, bad management, inattention, or neglect of others of the crew. Whatever may be the danger by reason of any of these causes, he must stand to his post, though destruction of life or limb may never be so imminent. He is fettered by the stern bonds of slavery—necessity is upon him, and he must hold on to his employment. Slaves, to be sure, are rational beings, but without the power of obeying, at pleasure, the dictates of their reason and judgment. Whether, therefore, the doctrine which has been applied in other states, of the irresponsibility of railroad companies to their free employees, for casualties happening upon the road, through the carelessness of some of them—all being co-workers in a common business—we do not perceive the propriety of applying this doctrine to the present case, in which an injury to a slave is the complaint.

2. Railroad companies, by their agents, are bound to exercise the same care and prudence to preserve from injury, slaves hired to aid in conducting trains, as an ordinarily careful man would observe in regard to his own property.

We think, therefore, that this case should be determined by the well known principles which have been heretofore adopted by this court in cases of the bailment or hiring of slaves. It is true, that when the owner of a slave hires him out to operate in a hazardous employment, he must be understood as risking the dangers incident to the employment. But the bailee should be held accountable for injuries inflicted upon a slave through the negligence and carelessness of himself or agents, as well when employed in hazardous enterprises, as when employed in the common avocations of life. If an injury results to a slave in the one, or in the other case, which

is attributable to the mismanagement or negligence of the bailee or his agents, there is, in each state of case, an equal propriety in holding the bailee responsible. The petition in this case charged the injury to have occurred through the negligence and carelessness of the conductor and engineer, and this charge, together with the other facts stated, manifested a cause of action, and the demurrer was properly overruled. And, were the instructions of the court to the jury free from objection, the verdict would not be disturbed.

But the third and fourth instructions, given at the instance of the plaintiff, do not contain the law applicable to the case, and ought not to have been given.

The defendants were only bound to the observance of ordinary care and diligence—that is, such care, caution, and prudence, as persons generally, in the same circumstances, would observe towards their own slaves. But the third instruction renders the defendants liable, if the injury to the slave could have been avoided by the utmost care and caution.

The criterion of recovery adopted in the fourth instruction is also erroneous. The jury are told that they may find damages equal to the value of the slave before he received the injury, when the evidence was rather calculated to produce the conclusion that he was still of some value. This instruction was improper and misleading.

The instructions asked by the defendants were properly refused. The first one assumes that the defendants are not responsible, if the injury which resulted to the slave were *incident* to the employment. Now we understand that incidental injuries are such as may necessarily occur from the very nature of the employment, and we have already said that for these the defendants would not be liable. But the testimony does not go to show that the injury in this case was a mere incident to the employment. The testimony rather conduces to show that

it was occasioned by neglect and carelessness, and might have been prevented by the exercise of due care. The proof, indeed, shows clearly that the injury was not a mere incident to the employment—a necessary result appertaining to the employment.

In regard to the second instruction asked by defendants, we would merely remark, that if, as supposed in the instruction, the slave, Henry, voluntarily took a perilous position, and thereby contributed to the injury, still, if it might have been prevented by the observance of due and proper care and caution by the conductor and engineer—that is, by the exercise of ordinary care and prudence by them, the defendants are not exonerated from responsibility.

Wherefore, the judgment is reversed, and the cause remanded for a new trial and further proceedings not inconsistent with the principles of this opinion.